Good morning, Your Honors. May it please the Court, I am Beth Carver for the appellant Nanomech. Nanomech brings this appeal from the dismissal of its complaint against its former employee, Arunya Suresh, who breached her contractual obligations to Nanomech when she accepted employment with Nanomech's direct competitor, BASF. Under the non-compete provision in her employment agreement, Ms. Suresh had agreed that for a two-year period after her employment with Nanomech terminated, she would not work for any business which competes with Nanomech. Suresh worked as a product engineer tribologist at Nanomech for a two-year period during which she was provided access to a wide range of Nanomech's trade secrets, including in particular the chemical formula and the manufacturing process for its patented lubrication product, N-Glide. Would the agreement prevent her from working for them in any capacity? It does, Your Honor. It doesn't list which positions she could take with an employer, but under Arkansas law, a non-compete is enforceable if an employee is able to use information obtained, trade secrets or confidential business information, to gain an unfair competitive advantage. So I think when the court's considering enforceability, it can consider whether the actual position the person is in is one in which they are able to use the information to gain a competitive advantage. But I don't think it affects... But when we're considering the question of the breadth of the restriction... I don't think it affects reasonableness, Your Honor. In the advanced environmental advanced control case, that was actually a tortious interference case that the Arkansas Supreme Court considered. And the underlying claim in there was that the new employer had helped the employee breach its non-compete agreement with the former employer. And the employer's non-compete agreement read substantially similar to this one. It prevented the employee from taking a job, basically taking any position with a competitor. Which case are you referring to now? It's advanced environmental recycling versus advanced control solutions. And also even in the Bendinger case that the court did hold that the non-compete was unreasonable in its geographic scope, the court didn't consider... That reads the same, that the employee was precluded from taking any position with the business competitor. I don't know of any Arkansas case that holds that a non-compete is unreasonable in some respect because it doesn't specify the positions that an employee can take. No, that wasn't my question. But the Bendinger case said because it didn't specify the lack of geographic limitation was problematic. And you have here no geographic limitation and no limitation on type of position. But the protectable interest in this case is trade secrets. And as I said, she has trade secrets regarding both the chemical formula and the manufacturing process for the N-Glide products. And she also was given access to trade secrets and confidential business information to Nanomex other products. So it's hard to think of any position that she could hold. She's a material scientist. That's her undergraduate degree. I think she may have a master's in it. She's told Nanomex she was leaving to pursue her PhD. I mean, I think it's... So you don't think we have to consider the hypothetical scenario in which she takes a position as a security guard or a... Correct, John. Why not? Because what's at stake here is too important to address hypothetical speculation that would never occur. I mean, this is a real world contract. We hired a product engineer tribologist who had a material sciences background. I think it's reasonable for the employer to conclude that person is going... Her career trajectory is going to keep her in the material sciences field. And she's not going to be... If, for example, I mean, she's precluded from working for a competitor. If, for instance, she had a change of heart and thought, I want to go into public relations or I want to go into maintenance or some other security, some other field, the fact that she would end up with a direct competitor of her employer, Nanomex, in what is really a pretty specialized field. The nanotechnology is used... It's nanomanufacturing of products, including these lubrication products. So I think that that would justifiably raise an employer's antenna if an employee who has been given all these trade secrets involving chemical formulas and manufacturing processes ended up in a security with a direct competitor. Again, it's well settled in Arkansas that a non-compete, a restrictive covenant is generally enforceable if it protects an employer's legitimate interests. It is reasonable in its temporal scope and it's reasonable in its geographic scope. There's no dispute here that trade secrets and confidential business information are protectable interests under Arkansas law. The district court here really jumped the gun in granting judgment on the pleadings to Ms. Suresh in dismissing Nanomex's complaint. The court held, as Judge Carlton alluded to, that the non-compete was unreasonable and unenforceable because it lacked a sufficient geographic restriction. The court also held that the phrase, any business which competes, is vague and undefined and also unenforceable. In dismissing the complaint, the district court misread and misapplied Arkansas law in several respects. First, the court disregarded a number of fundamental principles of Arkansas non-compete law. It's striking that the court's opinion does not even address what standard Arkansas courts apply in determining whether a non-compete is reasonable. The standard for reasonableness is whether the covenant is no more restrictive than is necessary to protect the employer's interests. The court's opinion never addresses that. The court's order also never considers the nature or the scope of the protectable interest asserted here by Nanomex, its trade secrets, or what kind of restriction would be necessary to adequately protect those trade secrets, particularly given that Nanomex competes globally. The court also failed to recognize that under Arkansas law, the reasonableness of a non-compete is not only a question of fact, but it's the party who's challenging the reasonableness, and in this case that would be Ms. Suresh, who bears the burden of proof. Moreover, Arkansas courts have uniformly held that whether a covenant is reasonable and enforceable must be decided on a case-by-case basis on the evidence. Neither the district court nor Ms. Suresh has cited a single case in which an Arkansas court invalidated a non-compete, deeming it unreasonable on its face. In that case-by-case determination of enforceability makes sense when you consider the standard for reasonableness. You have to take into consideration both the nature of the employer's protectable interests, here its trade secrets, and then what measures would be necessary to reasonably protect those trade secrets. Even if the reasonableness of a restrictive covenant could be determined on its face under Arkansas law, what the district court did here was basically something that the Arkansas Supreme Court explicitly rejected in the Bendinger case, which is the very case that the court put so much weight in. In Bendinger, the court said, we do not hold that every restrictive covenant that fails to contain a geographic restriction is unreasonable. Each case is governed by its facts. Now, even though the district court relied on Bendinger to such a great extent, it never cited that particular provision from Bendinger, nor did it consider the facts that are at issue here, the nature of Nanamec's interests and what steps would be necessary to protect them. Why would it be necessary to restrict her from working in other fields with a competitor? If that's the standard under Arkansas law, necessary to protect the interest, why would it be necessary to keep her from working in human relations or public affairs with a competitor? For a couple of reasons, Your Honor. First of all, there's no employee in the history of non-competes has ever addressed, has never called the former employer and said, hey, I just want you to know I'm about to give your trade secrets to my new employer or I've already done so. There's no transparency to the old employer when the new employer leaves and goes to a direct competitor. You don't know what's going on, so you have the non-compete to protect you in that instance. It would be easy enough for a new employer to install a person who's bound by a non-compete in another department of the company, but they're still in a position where they're able to use the information to the competitive advantage of the new employer. Again, that goes to the enforceability, which I think would be a question of fact for the trier of fact to decide. The court here further erred in finding Benninger controlling because that case is distinguishable for a number of reasons, both procedurally and factually. In Benninger, the court held that the non-compete was unenforceable, not on its face, but on its review of the evidentiary record and on the party's arguments. The covenant in that case, like this one, had no geographic limitation and it barred the employee from rendering service to a business competitor of Marshalltown Tool. Marshalltown first argued that the lack of a geographic restriction in the covenant was reasonable because it competed nationwide with a new employer and it had also fashioned an international market. But then it changed its position and argument, perhaps recognizing that a global restriction or a lack of a restriction could not be justified by nationwide competition. Then it argued to the court that the covenant restricted the employee from working for any entity that Marshalltown considered a competitor. In other words, it wanted a subjective definition of who its competitors were. So it asked the court to exclude any company in the trowel industry that is in competition with Marshalltown for sales in the United States, regardless of where the company is located. The problem with that argument is that that's not how the covenant read. It doesn't have the phrase business competitor in the United States. So Marshalltown was basically asking the court to rewrite its restrictive covenant, which under Arkansas law, courts are not allowed to do. It was basically asking the court to fit the scope of its restriction to the scope of its market. That's not this case. NanoMAC has no geographic limitation in its agreement because it competes globally, not internationally, not nationwide. And its protectable interest here is its trade secrets. And they're trade secrets that Ms. Suresh has intimate knowledge of in a wide range of areas, particularly with regard to the Englide product, which is used globally. It's used in applications ranging from military to all manner of industrial uses and even in racing cars. Again, she knows its chemical formula. She knows the manufacturing process. And that's in contrast to Bendinger, where the chancellor found that Mr. Bendinger's knowledge of Marshalltown's tools trade secrets was minimal at best, and that his highest use to his new employer was basically just his general knowledge of the trowel industry based on his experience. Generalized knowledge of an industry based on experience is not a protectable interest, but trade secrets certainly are. So NanoMAC isn't asking the court, wasn't asking the district court, to rewrite its employment agreement in any respect. On the contrary, its position is that any geographic territory in its non-compete would not adequately protect its interests. Again, NanoMAC is in a cutting edge, highly technical industry. It provides its trade secrets. It gives access to its trade secrets and other confidential information to its employees only on the condition that they sign a non-compete in addition to other guarantees of confidentiality that they take. So if an employee were to disclose a trade secret in New York, where Ms. Suresh was working for BASF, or Tokyo or Singapore, the loss of that trade secret, the disclosure of that trade secret would be just as devastating to NanoMAC's business as if it were disclosed in Arkansas or some other fixed territory. Most Arkansas cases in the non-compete area come up in sales cases. They usually involve customer contacts as the protectable interest. So there's no Arkansas appellate court that appears to have considered this particular scenario where an employer who competes globally is trying to protect its trade secrets. But there's also no indication in any Arkansas case that if an employer such as Coca-Cola moved to Arkansas, for example, and there are one or two employees at Coca-Cola who are supposed to have the Coca-Cola recipe, the Coke recipe, there's no indication in any Arkansas case that that Coke couldn't preclude its employees who have that trade secret information from working for any competitor globally. And that's what this case is. Ms. Suresh has trade secrets that could be, that the disclosure of which could devastate its business anywhere. We cite in our case, as a matter of fact, there are a number of cases from other jurisdictions that recognize that when an employer competes globally and its protectable interest is trade secrets, that a geographic restriction in the non-compete would not adequately protect those trade secrets. Where, I think where the district court went wrong here is it tried to fit this case in, you know, either the Bendinger bucket or the sales cases bucket. And what he should have done, what the court should have done under Arkansas law is follow the standard for reasonableness. And enforceability is to be decided on a case by case basis. And reasonableness is supposed to be based on an employer's need to protect its asserted legitimate interest. Nanomec can offer evidence in the district court at trial that its agreement is reasonable and enforceable and it's necessary to protect its trade secrets. In addition to holding that the agreement was unenforceable because it lacked a geographic restriction, the court also erred in concluding that the phrase any business which competes with Nanomec was vague and undefined and therefore unenforceable. And it again relied erroneously, I think, on the Bendinger case. In Bendinger, the court didn't hold that the agreement was unenforceable because business competitor wasn't defined. The problem there was that Marshalltown Tool was trying to define business competitor to include basically to write in the phrase business competitor in the U.S. market. And again, Arkansas courts aren't allowed to do that to make a restrictive covenant reasonable. If the court had any questions about what the term competitor means, it can do as other Arkansas courts do, which is look to the dictionary definition. I don't think competitor is ambiguous. The case is somewhat similar to the custom microsystems case in which the employee was precluded from working for a client of his employer and the court looked to the Black's Law dictionary definition of client to decide whether the new employer fit within there. If you have a final statement, I don't want to cut you off in the middle of the final statement. We ask that the court, we believe that this is a question of fact, the reasonableness of the restrictive covenant, and ask that the case be reversed and remanded. Thank you. Thank you very much. Okay, we'll next hear from Mr. Bryce Crawford. May it please the court. My name is Bryce Crawford. I represent the Appalachia-Roonee-Sherrish in this matter. And the judgment of the district court below should be affirmed for three reasons here today. I know there's a preliminary issue first of whether Sherrish's motion was procedurally proper. And Sherrish believes that it was because the pleadings were closed at the time that she filed her motion, which the court properly interpreted as a 12C motion for judgment on the pleadings. Now, that is because a Rule 12C motion may be filed once the pleadings are closed. And Rule 7A goes on to define what pleadings are allowed as to certain claims. Pertinent claims here or pertinent pleadings here would be a complaint, an answer, a counterclaim if there is one, and an answer to the counterclaim. The appellants rely on the case of Curry from this circuit, which considered the timeliness of a jury demand. And that case discussed the case of Edelman versus Locker, where the plaintiff moved for judgment on the pleadings before, on the defendant's counterclaim before the plaintiff had filed an answer. This is factually different from this scenario which has happened here. Sherrish moved for judgment on the pleadings only on the claims asserted by Nanomec, not on Sherrish's own counterclaim. So it is Sherrish's position that the claims, the pleadings were closed as to Nanomec's claims because no more pleadings were allowed to be filed on those claims once Sherrish filed her amended answer and counterclaim. The Ninth Circuit has kind of adopted this approach, or left the door open for this approach, I'm sorry, in the case of Doe versus United States, where the plaintiff moved for judgment on the pleadings on the government's counterclaim before it had filed an answer. And the court there found that the 12C motion was not timely. However, the case of Johnson versus Dodson in the Ninth Circuit, which was a district court decision there, an individual defendant there, Newby, moved for judgment on the pleadings on a claim that only that defendant was named in before other defendants had filed an answer. And that was found to be that the pleadings were closed as to that claim because all the pleadings that were allowed to be filed on that claim had been filed because there were no other defendants named in that claim. And that's exactly the situation that exists here, where all of the pleadings that could be filed on Nanomec's claims had been filed. And so Sherrish's motion for judgment on the pleadings, that's how the court construed it, was proper. In addition to being procedurally proper, the district court's judgment was also substantively proper. That's because even in spite of Arkansas's case-by-case analysis of non-compete agreements, Nanomec can simply plead no set of facts here that would show that its covenant is enforceable against Sherrish. And that is because Nanomec can in no way show that Sherrish's covenant is not broader than necessary to protect Nanomec's interests. And even if it is found that no geographic restriction would adequately protect Nanomec's confidential information here, the covenant is still broader than necessary to protect Nanomec's interests because it does restrict Sherrish from working in any capacity for any company which it deems a competitor. And as I pointed out in my brief, even if Sherrish were to go to work in the accounting department or whatever other department there, she would still be under Nanomec's position in violation of her agreement. And originally in its principle brief, Nanomec alleged that Sherrish was only prohibited from working in the narrow nanotechnology field. And as seen in the reply brief, they go on to change that argument and say that Nanomec is restricted, or I'm sorry, Sherrish is restricted from working in any position for any competitor because she could provide that information to them almost as if they had employed her in another position as a farce just to gain that information from them. However, that goes against the public policy of Arkansas. You know, if they were to employ her in another position just to gain access to that information, it would not even be necessary for them to employ her to do that. They could simply approach her. She could approach them in an indirect capacity as an independent contractor or an adequately protect Nanomec's interest. And Nanomec points out the able-to-use standard that is discussed by the court in the Bendinger case where an employee is able to use information. The court goes on to discuss that the court could still enforce that non-compete agreement against the employee even though there is no direct evidence that the employee has actually disclosed that information yet. However, it would be implicit in that situation that the appropriate remedy would be an injunction against that employee, not a breach of contract action since logically there would have been no damages yet. And damages is an element of the cause of action for breach of contract. Whereas here, Nanomec did originally assert a claim for an injunction in the district court which was also dismissed by the district court and Nanomec does not appeal that here today. However, they appeal only their dismissal of their breach of contract claim which Nanomec cannot plead any damages resulting from its alleged breach of Shurish's non-compete. So additionally, Arkansas's case-by-case analysis of non-compete agreements is not a loosening of the federal pleading standard. Nanomec still bears the burden under Ashcroft and Bell Atlantic v. Twombly to go above and beyond pleading mere labels and conclusions and formulaic recitation of the elements of a cause of action for breach of contract. And as shown here, they simply cannot allege in any way that this non-compete agreement is enforceable against Shurish and that it's not broader than necessary to protect its interests. And even under the Girard v. Rebsenman case, which Nanomec cites as controlling here, which as they point out was a non-compete sought to be enforced against an employee engaged in a sales capacity, were they... Well, I don't think they say that Girard is controlling. It's obviously different factually. Their point is that all these cases depend on the facts and the judge should have let the case proceed further. Yes, Your Honor. What do you say to that, to decide whether the restriction was broader than necessary under the particular circumstances of this case, this industry, this type of employee and so forth? What do you say to that? Well, Your Honor, even in the Girard case, the court pointed out that there were limiting provisions in the restrictive covenant in Girard where the restricted employee there could stay in his hometown and could still have access to, I believe it was 80% to 90% of the market there for those clients. Whereas here, Suresh is completely almost restricted from working in her field of study entirely. And so that just goes to show that there is no... What's unreasonable about that? It would be against the public policy of Arkansas to completely restrict an employee from working in their field. Even if all work in the field would involve using the trade secrets that she obtained from Natomec? Or are you saying there's some other way you think she should be able to work in the field? I think that, I believe her employment contract also contained a nondisclosure provision, separate from the nondisclosure provision, which was dismissed and not appealed. And I think that would be the appropriate venue, or avenue, for a company to protect its information would be through nondisclosure agreements, the Trade Secrets Act, both of which Natomec nondeserve causes of action for here. It is possible to go to work in those fields without disclosing your previous employer's confidential information. And especially to, you could go to work in other capacities there for a competitor and not disclose that information and not be working in that field. Just to note, it's not before the record here, but my client is now pursuing an MBA degree. And so if she were to go to work for, or get an offer to go back to work for BASF or any other company, under Natomec's interpretation of this agreement, she would not be able to go to work for that company in any capacity. And so, you know, I think that the appropriate venue for addressing a company's confidential information would be through nondisclosure agreements rather than through noncompetition agreements where the employee is completely restricted from any employment with that company. And as discussed, Natomec has also failed to properly plead that it was damaged by any breach of sure assure. A company, or a plaintiff must do more than merely allege a conclusion that it was damaged by an employee's alleged breach. And that is all that Natomec has done here. Now, the district court below, in dismissing the, Natomec's claim for breach of a nondisclosure agreement, found that Natomec had not properly pled damages. Now, many of the damages that Natomec alleged for, or many of the actions by sure assure, which Natomec alleged were its damages for the nondisclosure agreement, were also alleged in support of its cause of action for breach of the noncompete agreement. And Natomec alleged that through sure assure's work at BASF, it was being harmed by sure assure's breach of the covenant. And that is only a conclusory statement, which is not sufficient here. And as discussed, it would be more appropriate for them to have pursued an injunction against sure assure to prevent her from disclosing that information. However, they've pursued a breach of contract action against her. And as Natomec said in their reply brief, they had not had an opportunity for discovery. However, that is incorrect. As is in the appendix, at pages 61 through 67, Natomec filed a motion for expedited discovery in this matter and served interrogatories on sure assure, which she then answered along, I believe it was after she filed her answer here. So sure, Natomec has had an opportunity to conduct discovery here, and even after discovery did not amend its complaint to make a further allegation of damages in this matter. And furthermore, enforcing sure assure's covenant to restrict her only from working in a position which she was employed at at Natomec would require a rewriting of the covenant, which under Arkansas law is not permissible. As the covenant reads, she is restricted from working in any employment in any capacity for any company which Natomec deems a competitor. And in sure assure's position, it would be enforceable against her only if she were restricted from working in a division similar to what she was working in at Natomec. To craft that restriction against her would require a rewriting of that covenant, which is impermissible under Arkansas law. Non-compete agreements must be written enforceably. They cannot be rewritten by the court. So unless the court has any other questions, I will briefly conclude. In conclusion today, the district court's dismissal was both procedurally proper and substantively proper as discussed. It was procedurally proper because once sure assure had filed her amended answer and counterclaim, the pleadings were closed as to Natomec's claims on which sure assure moved for judgment on. Furthermore, the dismissal by the district court was substantively proper because Natomec can plead no set of facts which would show that sure assure's covenant is not overbroad and not unreasonable, and it would be an impermissible burden to place on sure assure that Natomec be granted a free pass, essentially a round rule 12B6 or 12C, and that they are automatically entitled to an evidentiary hearing as they requested here. There are simply no set of facts which they could plead that shows that it is necessary for them to restrict sure assure from working in any capacity for any company to adequately protect its information. And additionally, and finally, Natomec failed to properly plead that sure assure was damaged or that it was damaged by sure assure's breach or that sure assure's breached the non-compete agreement. Thank you. Thank you very much. Does the appellant have additional time? No discussion. We're going to give you a minute, a minute and a half to wrap this up. I appreciate that, Your Honor. First of all, there is no evidence on this record that Ms. Suresh would be restricted from working in her field by the non-compete agreement. She's a materials sciences. She works as a tribologist. Tribology is the study of friction and lubrication and where when surfaces are in relative motion. We're talking about nano-manufactured lubrication solutions in particular in this case. She could work in the tribology field. She could work in materials sciences. And that's what an evidentiary hearing is for, is to decide these types of issues. But it certainly can't be decided on the face of the pleadings that Ms. Suresh is precluded from working in her field. As far as damages go, this is a case where the nanomech has absolutely no visibility of what information may have been given by Ms. Suresh while she was working at BASF. At a minimum, nanomech would be entitled to attorney's fees and nominal damages. But I think nanomech is entitled to discovery in this case to determine whether there were any disclosures and whether there would be any damages that would flow from those disclosures. As far as whether there was a breach in this case, the covenant was breached when she accepted employment with BASF. Ms. Suresh's counsel also says, well, the interests here could be adequately protected through a nondisclosure agreement. But again, the old employer has no idea, unless the new employer comes up with a product that is obviously identically the same within the term of the nondisclosure agreement, the old employer has no idea what disclosure has been made of its trade secrets. Trade secrets can be used to a competitive advantage without creating some specific product that the old employer can point to and say that's based on our trade secret. That's why Arkansas law allows non-compete agreements. I see my time is up, and I appreciate the court's attention. Thank you. Thank you very much. The case has been well presented by both sides, and the court will take it under advisement and render a decision in due course. We thank you for attending here this morning. Thank you, Your Honor. Mr. Clerk, do we have an additional case? One more, Your Honor. Okay. The final case for submission this morning is 13-2773, Dolores Comstunk v. UPS Brown.